1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                        NORTHERN DISTRICT OF CALIFORNIA

9

10    FRANK RAMIREZ,                              No. C 09-0520 WHA (PR)

11                    Petitioner,                 **ORDER DENYING PETITION FOR WRIT
                                                  OF HABEAS CORPUS**
12          v.

13    MATHEW CATE, Warden,

14                    Respondent.

15    _____/

16

                                  **INTRODUCTION**
17

18          This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254.

19    Respondent was ordered to show cause why the writ should not be granted based on the claims set

      forth in the petition.  Respondent has filed an answer and a memorandum of points and authorities in
20
      support of it.  Although given an opportunity to do so, petitioner did not file a traverse.  For the
21
      reasons set forth below, the petition is **DENIED**.
22
                                   **STATEMENT**
23

24          In 2003, a jury in Santa Clara County convicted petitioner of attempted felony false

25    imprisonment and of annoying or molesting a child.  Petitioner had also been charged with

      attempted rape and attempted kidnapping, but the jury found him guilty of the lesser-included
26
      offenses misdemeanor assault and attempted false imprisonment.  Petitioner thereafter admitted to
27
      five prior "strike" convictions and two prior prison terms.  The trial court sentenced him to a term of
28
      27 years to life in state prison.  The California Court of Appeal reversed his conviction on appeal,

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

striking the convictions on the lesser-included offenses of misdemeanor assault and the second count of attempted false imprisonment (Exh. F).  The court also reversed the conviction for annoying or molesting a child on the basis of instructional error, and remanded with instructions to either retry that charge or resentence petitioner (*ibid.*).  A petition for review to the California Supreme Court was denied (Exh. J).  The prosecutor elected not to retry the reversed count and the trial court again sentenced petitioner to a term of 27 years to life in state prison based on his conviction for felony false imprisonment and his prior strike convictions and prison terms (Exh. L at 33-36, 39).  The California Court of Appeal affirmed the conviction and new sentence on August 21, 2007(Exh. P), and the California Supreme Court denied the petition for review in October 24, 2007 (Exh. R).

The following background facts describing the charges are taken from the opinion of the California Court of Appeal on the second appeal, *People v. Ramirez*, 2007 WL 2372402, 1-2 (Cal. Ct. App. Aug. 21, 2007) ("*Ramirez II*").

On June 19 2000, 16-year-old April was walking from a bus stop to her school when she noticed petitioner driving slowly up and down the street in his Mustang, watching her.  She "[r]olled [her] eyes" and "threw up [her] hands like [she] was saying, 'What?'", then kept walking and "flipped him off as he was driving away."  About a half hour later, April returned to the bus stop and she noticed that the Mustang was parked next to the bus stop.  Petitioner approached her on foot, and they engaged in a brief discussion in which petitioner asked her for directions to a shopping center.  April testified that she answered petitioner's questions but was "acting rude" in order to try to get petitioner to leave.

Petitioner talked to April for approximately 20 minutes and she "did not feel threatened" at any point.  He asked her where she was going, and although she was going home, she told him that she was going to a Target store.  He offered her a ride, but she declined.  She got up from her seat to look at a dent in petitioner's car and told him that his car was "crappy."  He kept telling her that he was a nice guy and did not want to hurt her and, despite her continued refusals, petitioner offered her a ride seven different times.  Petitioner, who had been standing next to April, put his hand on her arm, opened the car's passenger door, and asked her again if she wanted a ride.

2

United States District Court
For the Northern District of California

A mechanic at an auto body shop across the street had been watching and became concerned when he "noticed that [petitioner] had grabbed her by the upper part of the arm and was like walking her towards his car." He approached them and told April, "If I was you, I would not climb into that car." Petitioner told April, "Never mind him" and that he was just a jealous friend of petitioner's. The mechanic then showed April a sex offender flyer distributed by the police in the area recently describing petitioner as a "rapist," with his photo and license plate number matching the one on petitioner's car. April started screaming, and petitioner got into his car and drove off "extremely fast" with his tires "screeching."

Evidence of four prior acts of sexual misconduct by petitioner was also introduced, three of which occurred in the immediate vicinity of the incident involving April. The jury was read a transcript of the testimony given by Linda R. in an earlier criminal case in 1982. She was waiting outside a bar at closing time when petitioner approached her and they talked for several minutes. They walked toward a gas station that was next door and petitioner put his hand on her shoulder and then put it around her mouth and throat, and he told her that he would kill her if she were not quiet. He kissed her and removed her pants, and he tried unsuccessfully to have intercourse with her. He then moved her to another area where he raped her, repeating his threats to kill her. When she yell for her boyfriend, petitioner ran off.

A woman named Jody testified that in January 1983, she and her friend Carol met petitioner at closing time at the same bar, when he offered to give them directions to a party and rode with them to an apartment complex. After an unsuccessful attempt to find the party, Jody and Carol decided to leave, and Carol went to get her car while Jody stayed with petitioner. Petitioner grabbed Jody, hit her on the side of her face and head, and started dragging her through a parking lot. Carol returned, and petitioner grabbed Jody by the arm and swung her onto the hood of Carol's car. He told Carol not to listen to Jody because she was drunk. Carol drove away with Jody.

Six days later, two women named Ann and Sherry went to the same bar, and petitioner told Ann that her friend was getting sick outside the bar and was calling for her. Ann followed petitioner to where he said Sherry was, but, as they walked through an apartment complex, Ann said she did

3

1    not believe him and started walking back.  Petitioner threw Ann down, put his hands around her

2    neck and began choking her.  He covered her mouth when she tried to scream.  Someone came to

3    help her and petitioner ran off.  Finally, in 1992, two women, Patricia and Tisha, went to a Black

4    Angus restaurant in the area and petitioner told Patricia that Tisha was outside and was pretty drunk.

5    Patricia accompanied him to the parking lot to look for her.  When they came to a dark secluded

6    spot, petitioner pushed Patricia down on some ivy, got on top of her, started choking and gagging

7    her, and put his hand under her skirt.  Some other people in the parking lot heard the commotion and

8    approached.  Petitioner ran off.

## ANALYSIS

**A.      STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis

of a claim that was reviewed on the merits in state court unless the state court's adjudication of the

claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. 2254(d).  The first prong applies both to questions

of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 09 (2000),

while the second prong applies to decisions based on factual determinations, *Miller El v. Cockrell*, 537

U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause

of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the Supreme] Court has

on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at 412 13.  A state court

decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of

2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions

but "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court

on habeas review may not issue the writ "simply because that court concludes in its independent

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."  *Miller El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546 47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Ibid*.

Under 28 U.S.C. ' 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."  *Miller El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, which in this case is that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 06 (1991).

**B.     ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) there was insufficient evidence to support his conviction for attempted false imprisonment, in violation of his right to due process; and (2) his sentence violates his Eighth Amendment right to be free from cruel and unusual punishment.

    **1.     <u>Sufficiency of Evidence</u>**

Petitioner claims that there was insufficient evidence to support his conviction for attempted false imprisonment.

A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim.  *Jackson v. Virginia*, 443 U.S. 307, 321-24 (1979).  A federal

United States District Court
For the Northern District of California

court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Jackson*, 443 U.S. at 324. After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. 2254(d)).

Under California law, false imprisonment is "the unlawful violation of the personal liberty of another." Cal. Pen. Code § 236. For it to constitute a felony, the restraint of another person must be accomplished through violence, menace, fraud or deceit. Cal. Pen. Code § 237. The California Court of Appeal explained California law on attempt as follows:

> "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (Pen.Code, § 21a [citations omitted]).
>
> Mere preparation, such as planning the offense or devising, obtaining or arranging the means for its commission, does not constitute an attempt. (*See People v. Dillon* (1983) 34 Cal.3d 441, 452-453.) The act "must be a direct movement after the preparation that would have accomplished the crime if not frustrated by extraneous circumstances. (*People v. Memro* (1985) 38 Cal.3d 658, 698....)" ( People v. Carpenter (1997) 15 Cal.4th 312, 387.) However, an actual element of the offense need not be proved. (*People v. Dillon*, *supra*, 34 Cal.3d at p. 454.) Moreover, "the act need not be the last proximate or ultimate step toward commission of the substantive crime. [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 376.) However, where " 'the design of a person to commit a crime is clearly shown, slight acts done in furtherance of that design will constitute an attempt, and the courts should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime.' " (*People v. Memro*, *supra*, 38 Cal.3d 658, 698, quoting *People v. Fiegelman* (1939) 33 Cal.App.2d 100, 105.)

*People v. Ramirez*, 2008 WL 488815, 5-6 (Cal. Ct. App. Mar. 3, 2005) ("*Ramirez I*").

Petitioner contends that his conduct did not amount to an attempt at false imprisonment

because he was simply talking to a woman during the day on a busy street and asking her if she wished to accompany him, and she was not restrained.  The California Court of Appeal found that petitioner's conduct did amount to a violation of California law on attempted false imprisonment. *Id.* at 6.  His considerable efforts to get April into his car, including disregarding her repeated refusals, unlocking the car door with a remote device, opening the door to the car, and escorting her with his hand on her arm satisfied the elements of an attempt insofar as they were "ineffectual acts done toward the commission of false imprisonment." *Ibid.*  They were ineffectual because they were thwarted by the "extraneous circumstance" of an intervening mechanic. *Ibid.*  The evidence of petitioner's specific intent to restrain April in his car was supplied by his similar prior acts of luring women to an isolated place and using force to restrain and assault them. *Ibid.*  His use of fraud and deceit was evinced by his repeated lies to April in order to get her into his car, including lies about his pretended interest in a bus route when he intended to drive, his false statement that he had been at the auto body shop across the street that day, his assurances that he was a "really nice guy" despite his many prior violent sexual offenses, and his claim to April that the mechanic was his friend and his claim to the mechanic that April was his friend. *Ibid.*

Petitioner does not argue that there was insufficient evidence to prove his conduct, but rather that his conduct does not amount to a violation of California's law against attempted false imprisonment.  As such, his claim is premised on his disagreement with the state appellate court on a question of state law.  A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction or one made by an intermediate appellate court in the absence of persuasive data that it is contrary to the interpretation of the highest state court, binds a federal court sitting in habeas corpus. *See Hicks v. Feiock*, 485 U.S. 624, 629-30 & n.3 (1988).  Petitioner presents no data, let alone persuasive data, that the California Court of Appeal's conclusion that petitioner's conduct amounted to a violation of California law was contrary to the opinion of the California Supreme Court.  Consequently, the California Court of Appeal's determination of state law that petitioner's conduct violated state law is binding on this court, and he is not entitled to federal habeas relief on his claim of insufficient evidence.

7

United States District Court
For the Northern District of California

2. **Excessive Sentence**

Petitioner claims that his sentence of 27 years to life in state prison violates the Eighth Amendment prohibition of cruel and unusual punishment. Petitioner's sentence was enhanced to 25 years to life based on his five prior "strike" convictions under California's "Three Strikes," and he received two additional years based on his two prior prison terms. *See* Cal. Pen. Code §§ 667(b)-(i), 667.5(b), 1170.12.

"The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010). "For the most part, however, the [Supreme] Court's precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime." *Graham*, 130 S. Ct. at 2021. In analyzing petitioner's claim is that his sentence was disproportionate to his crime, the court "considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Ibid.* "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates 8th Amendment). "A gross proportionality principle is applicable to sentences for terms of years," but "only in the 'exceedingly rare' and 'extreme' cases." *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 24-25 (2003) (internal quotation and citation omitted). In determining whether the sentence is grossly disproportionate under a recidivist sentencing statute, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." *Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

In judging the appropriateness of a sentence under a recidivist statute, such as petitioner's sentence, a court may take into account the government's interest not only in punishing the offense of conviction, but also its interest "in dealing in a harsher manner with those who [are] repeat[]

criminal[s].'" *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992) (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980)).  The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime, as may occur in a sentencing scheme that imposes longer terms on recidivists. *Ewing*, 538 U.S. at 29-30.

Although there is no evidence that petitioner physically harmed the victim or succeeded in falsely imprisoning her, his behavior closely paralleled his behavior leading up to his prior sexual assaults of numerous other women.  In this case, petitioner's attempt to get the victim in the car was thwarted by the man who intervened and warned the victim about petitioner's past, but the victim was nevertheless "extremely traumatized" by his behavior" (Exh. L at 34).  The fact that the victim was a minor certainly made petitioner's crime more grave.  Petitioner's sentence was extended due to his prior convictions and prison terms for violent sex offenses.  He suffered four convictions for assault with intent to commit rape and one conviction for forcible rape.  *Ramirez II*, 2007 WL. 2372402 at 2.  He had served a prior prison term of 16 years and eight months for one count of rape and three counts of assault with intent to commit rape, was released, was sent to prison of ten more years for assault with intent to commit rape, and was on parole at the time of the instant offense.  *Id.* at 3.  Indeed, based on petitioner's eleven prior felony and misdemeanor convictions, the trial court calculated that he had an "unbroken prison record since 1981." *Ibid.*  Sentences similar to petitioner's have been found constitutional for commitment offenses and criminal histories of less gravity.  *See, e.g., Ewing*, 123 S. Ct. at 1190 (upholding sentence of 25 years to life for recidivist convicted most recently of grand theft); *Rummel*, 445 U.S. at 284-85 (upholding life sentence with possibility of parole for recidivist convicted of fraudulent use of credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false pretenses); *Taylor v. Lewis*, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding sentence of twenty-five years-to-life for possession of .036 grams of cocaine base where petitioner served multiple prior prison terms and his prior offenses involved violence and crimes against a person); *Bland*, 961 F.2d at 128-29 (upholding life sentence without the possibility of parole for being a felon in possession of a firearm with thirteen prior

*United States District Court*
For the Northern District of California

violent felony convictions, including rape and assault).

The state courts' rejection of petitioner's claim that his sentence was grossly disproportionate in violation of the Eighth Amendment was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law.  Accordingly, petitioner is not entitled to relief on this claim.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied.  Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED**.

DATED: September 30 , 2010

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

10

1    G:\PRO-SE\WHA\HC.09\RAMIREZ0520.RUL.wpd

**United States District Court**
For the Northern District of California